IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KIEARRE REESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-1332-RJD |
| | ) | |
| DR. JOHN TROST, WARDEN OF MENARD | ) | |
| CORRECTIONAL CENTER, and NURSE | ) | |
| PRACTITIONER MOLDENHAUER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Kiearre Reese, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff alleges he was provided delayed and inadequate treatment for his severe hemorrhoids. Plaintiff is proceeding in this action on the following claims:

> Count One: Eighth Amendment deliberate indifference claim against Dr. Trost for refusing to refer Plaintiff to an outside specialist for treatment of his hemorrhoids, even though Dr. Trost determined that the referral was medically necessary.
>
> Count Two: Eighth Amendment deliberate indifference claim against Nurse Practitioner Moldenhauer for refusing to examine Plaintiff, refusing to refer Plaintiff to another medical provider who could examine and treat his hemorrhoids, and giving Plaintiff medication that worsened his condition and failed to relieve Plaintiff's pain.

The Warden of Menard was also added as a defendant in this action in their official capacity only to implement any injunctive relief that may be ordered.

Now before the Court are motions for summary judgment filed by the Warden of Menard

(Doc. 75), and Defendants Dr. John Trost and Michael Moldenhauer (Doc. 78). For the reasons set forth below, the Menard Warden's Motion is **GRANTED**, and Moldenhauer and Trost's Motion is **GRANTED IN PART AND DENIED IN PART**.

As a preliminary matter, the Court addresses Plaintiff's argument that because the Affidavit of Michael Moldenhauer is undated it must not be considered in support of his motion for summary judgment. Plaintiff is correct that 28 U.S.C. § 1746 requires unsworn declarations to be subscribed under penalty of perjury, signed, and dated. While the Court recognizes Moldenhauer's failure to date his declaration, Moldenhauer's statements were certified "under penalty of perjury," and because the Court can approximate the date of signature based on the content and filing date of the declaration, the Court will consider it. *See Chicago Regional Council of Carpenters Pension Fund, et al. v. Longshore/Daly, Inc.*, No. 08-C-359, 2014 WL 71622, n.1 (N.D.Ill. Feb. 25, 2014). *See also E.E.O.C. v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 639 (N.D. Ill. 1988) ("[28 U.S.C. § 1756] requires verification in *substantially* prescribed form. The crucial aspect of the form provided in the statue is that the person write his or her signature under penalty of perjury.") (emphasis in original).

## Factual Background

Plaintiff was incarcerated at Menard Correctional Center at all times relevant to his complaint. On March 2, 2016, Plaintiff saw a nurse for a complaint of pain in his upper abdominal area and blood in his stool (Affidavit of John Trost, MD, Doc. 85 at ¶ 5; *see* Doc. 79-3 at 13). Plaintiff was provided pain medication and advised to return if his symptoms worsened or interfered with daily functioning (*see* Doc. 79-3 at 13). Dr. Trost first saw Plaintiff for complaints of upper abdominal pain and hematochezia (blood in his stool) on March 8, 2016 (Doc. 85 at ¶ 6; *see* Doc. 79-3 at 14). Dr. Trost ordered a chest x-ray and labs, including a fecal occult blood test

(FOBT), which is used to test stool samples for hidden blood (Doc. 85 at ¶ 6; *see* Doc. 79-3 at 14). Plaintiff's FOBT results came back positive on April 11, 2016 (*see* Doc. 79-3 at 181), and Plaintiff was approved for a consultation with an outside gastroenterologist (Doc. 85 at ¶ 8).  On May 27, 2016, Plaintiff was scheduled for an appointment with Dr. Feldman, a gastroenterologist, in Belleville, Illinois (Doc. 85 at ¶ 9; *see* Doc. 79-3 at 21).  Plaintiff saw Dr. Feldman on June 7, 2016 (Doc. 85 at ¶ 10; *see* Doc. 79-3 at 68-69).  Dr. Feldman's assessment was hematochezia and gastroesophageal reflux disease (GERD) (*Id.*).  Dr. Feldman ordered an esophagogastroduodenoscopy (EGD) and colonoscopy (*Id.*).  Dr. Feldman performed an EGD and colonoscopy on Plaintiff on June 23, 2016 (Doc. 85 at ¶ 11; *see* Doc. 79-3 at 70-75).  During the colonoscopy, Dr. Feldman found large internal hemorrhoids, and recommended that Plaintiff be scheduled for a banding procedure, which would remove hemorrhoids by placing tight bands around their base (Doc. 85 at ¶ 11).  Dr. Feldman performed hemorrhoid banding on Plaintiff on July 21, 2016 and August 16, 2016 (*Id.* at ¶ 12).  According to Dr. Feldman's procedure note, "[t]he patient was discharged home without pain or other issues … The patient should not need further banding … No complications were encountered" (*Id.*).  Plaintiff testified that after his banding procedures his symptoms worsened and he experienced increased inflammation and pain while defecating, and more frequent blood with his bowel movements (Deposition of Kiearre Reese, Doc. 76-1 at 11).

On October 9, 2016, Plaintiff saw Defendant Nurse Practitioner Moldenhauer (Affidavit of Michael Moldenhauer, Doc. 79-2 at ¶ 6; *see* Doc. 79-3 at 32).  According to the affidavit of Moldenhauer, Plaintiff reported that he was again bleeding from hemorrhoids; however, Plaintiff refused a visual or digital rectal examination (Doc. 79-2 at ¶ 6; *see* Doc. 79-3 at 186). Moldenhauer further attests that Plaintiff signed a "Medical Services Refusal" form, and

Moldenhauer referred Plaintiff to Dr. Trost for further examination (Doc. 79-2 at ¶ 6).  Plaintiff attests he did not refuse a visual or digital rectal examination, testifying that Moldenhauer never asked if he could perform an exam (Doc. 76-1 at 13), and asserting NP Moldenhauer directed him to sign a piece of paper while Moldenhauer obscured the top of the page (Affidavit of Kiearre Reese, Doc. 89 at 2).  Plaintiff believed he was signing a physician referral form and understood it to be standard procedure to do so (Doc. 89 at 2).  Plaintiff saw Dr. Trost on October 28, 2016 (Doc. 85 at ¶ 14).  Dr. Trost attests, and the medical records demonstrate, that Plaintiff reported he still had some bleeding with his bowel movements, and Dr. Trost prescribed Fibercon, a bulk-forming laxative, and Colace (*Id.*; *see* Doc. 79-3 at 35).  Plaintiff avers he told Dr. Trost his bleeding had been worse since his banding procedure, and he was in severe pain associated with rectal inflammation (Doc. 89 at 2).  Plaintiff attests Dr. Trost determined that Plaintiff needed to be sent to a different "outside hospital" because of the possibility of a ruptured hemorrhoid, but that any such referral would need to be delayed for "a little while" because Dr. Trost had already sent Plaintiff out and he did not want Menard officials to look "incompetent" (*Id.* at 2-3).  Plaintiff attests that between this encounter and January 18, 2017, he wrote to Dr. Trost inquiring about when he would be sent out (*Id.* at 3).  Plaintiff also asserts he spoke to Dr. Trost on two or three occasions during this time while he was in the healthcare unit, and Dr. Trost would tell him he was working on sending him out (*Id.*).

Plaintiff asserts he submitted an emergency grievance and, soon after the warden found an emergency was substantiated, he was seen by Defendant Moldenhauer on January 20, 2017 (Doc. 89 at 3).  According to Moldenhauer, during this examination Plaintiff did not complain about hemorrhoids (Doc. 79-2 at ¶ 9).  Plaintiff was scheduled for renewal of Prilosec, and Moldenhauer explained to Plaintiff the difference between Prilosec and Pepcid, and changed

Plaintiff's prescription to Pepcid (Doc. 79-2 at ¶ 9; *see* Doc. 79-3 at 36). Plaintiff, however, contends he relayed to Moldenhauer his history with hemorrhoids and his conversation with Dr. Trost concerning the puss, blood, and drainage he was experiencing (Doc. 89 at 3). Plaintiff also asserts Moldenhauer stated he was not being seen for hemorrhoids during this particular encounter, and that there was not much that could be done to treat the hemorrhoids anyway (*Id.*). According to Plaintiff, Moldenhauer offered Plaintiff some cream and pills, but Plaintiff explained the medicine did not work and exacerbated his pain (*Id.*). Plaintiff also remarks that he asked Moldenhauer to examine him or refer him to someone who would examine him, but Moldenhauer refused (*Id.* at 3-4).

Plaintiff was scheduled for a three-year physical exam with Moldenhauer on March 6, 2017, but refused the physical exam as well as a genital and rectal exam (Doc. 79-2 at ¶ 10; *see* Doc. 79-3 at 187). Plaintiff disputes that he refused any examination (Doc. 89 at 4). According to Plaintiff, when he saw Moldenhauer he complained of pain from his hemorrhoids, and asked if Dr. Trost was going to have him sent out (*Id.*). Plaintiff asserts Moldenhauer said he would refer Plaintiff and asked him to sign the bottom of a piece of paper (*Id.*). Plaintiff contends he again did not know he was signing a refusal form (*Id.*). Defendant Dr. Trost left his position as Medical Director at Menard on March 17, 2017 and never saw Plaintiff again after his October 28, 2016 examination (Doc. 85 at ¶¶ 18, 20).

Plaintiff was next seen by medical staff for complaints of hemorrhoids on January 17, 2018 (Doc. 79-2 at ¶ 12; *see* Doc. 79-3 at 48). On that date, a nurse gave Plaintiff hemorrhoid cream, and instructed him on cleaning and medication usage (Doc. 79-2 at ¶ 12; *see* Doc. 79-3 at 48). Defendant Moldenhauer saw Plaintiff on January 29, 2018, and upon examination found a non-protruding internal hemorrhoid (Doc. 79-2 at ¶ 13; *see* Doc. 79-3 at 49). Plaintiff requested

surgical intervention and Moldenhauer referred Plaintiff to Dr. Siddiqui (Doc. 79-2 at ¶ 13; *see* Doc. 79-3 at 49).   Dr. Siddiqui saw Plaintiff on February 16, 2018, and Plaintiff was approved for an outside consultation with a general surgeon for additional banding or hemorrhoidectomy (Doc. 79-2 at ¶14; *see* Doc. 79-3 at 50).   Plaintiff was referred to Dr. Kevin Barnett, who surgically removed the hemorrhoid on May 8, 2018 (Doc. 79-2 at ¶¶ 15-16).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Plaintiff is proceeding in this action on an Eighth Amendment claim of deliberate indifference against Dr. Trost and NP Moldenhauer for their failure to adequately and timely treat

his hemorrhoids.   Plaintiff is also proceeding against the Warden of Menard Correctional Center, Anthony Wills, in his official capacity for purposes of injunctive relief.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind."   *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference.  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'."  *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).   "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense."   *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough.

*Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted).

Defendants do not address whether Plaintiff's hemorrhoids constitute a serious medical need and, as such, the Court considers this issue conceded for purposes of this order.

### *Dr. John Trost*

Dr. Trost argues he was not deliberately indifferent to Plaintiff's medical condition, asserting Plaintiff's claim against him amounts to no more than dissatisfaction with his prescribed course of treatment. Plaintiff argues Dr. Trost was deliberately indifferent insofar as Dr. Trost delayed in referring him to an outside specialist for complaints of rectal bleeding in March 2016, and did so only after Plaintiff filed an emergency grievance, and again delayed appropriate treatment after Plaintiff advised Dr. Trost his symptoms had worsened in October 2016.

Based on the undisputed record before the Court, Plaintiff first saw Dr. Trost for complaints of rectal bleeding on March 8, 2016. A stool sample was subsequently taken and, after the results were positive, Plaintiff was seen by an outside specialist, Dr. Feldman, on June 7, 2016. Plaintiff complains the referral to a specialist was delayed and only occurred after he submitted an emergency grievance dated May 31, 2016 (*see* Doc. 88 at 41-42). Based on the record before the Court, it is evident that Plaintiff's complaints related to his hemorrhoids were not ignored, however, the Court considers whether waiting three-months to be seen by a specialist could constitute deliberate indifference.

The Seventh Circuit has remarked that a "delay in treating non-life-threatening but painful

conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Indeed, the "length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* In this instance, a three-month delay from Plaintiff's initial appointment with Dr. Trost and his first examination with an outside specialist does not give rise to a constitutional violation. There is no evidence that any delay exacerbated Plaintiff's condition and Plaintiff has not provided evidence he was in pain during this time (*see, e.g.*, Doc. 79-3 at 18). Moreover, there is no evidence that Dr. Trost was in any way involved in any delay or knowingly delayed the referral at a substantial risk to Plaintiff's health. Notably, Dr. Trost ordered a fecal occult blood test on March 8, 2016, which was not completed until April 11, 2016. Soon thereafter, Dr. Trost sought a referral to an outside specialist, which was approved, and Plaintiff was seen by Dr. Feldman on June 7, 2016. In light of the totality of the circumstances and in consideration of the length of the delay and the seriousness of Plaintiff's condition, the Court does not find Dr. Trost was deliberately indifferent in failing to ensure Plaintiff was seen by an outside specialist before June 7, 2016.

Plaintiff also contends that Dr. Trost was deliberately indifferent in failing to refer Plaintiff to an outside specialist after he complained to Dr. Trost that his symptoms had worsened in October 2016. It is undisputed Plaintiff saw Dr. Trost on October 28, 2016 for complaints of rectal bleeding during bowel movements. Dr. Trost prescribed Fibercon, a laxative, and Colace, a stool softener. Plaintiff contends Dr. Trost determined Plaintiff needed to be sent to another outside specialist at that time, but told Plaintiff he would have to wait a "little while" because Dr. Trost did not want to look incompetent. Dr. Trost explains that he considered Plaintiff's complaints and, knowing Plaintiff had hemorrhoid banding just two months prior, he believed

Plaintiff was likely suffering from hemorrhoids or anal fissures which are generally harmless and can be managed with conservative treatment, such as fiber supplements and laxatives (Doc. 85 at ¶ 19).  There are disputed factual issues concerning whether Plaintiff followed-up and continued to complain about his symptoms prior to Dr. Trost leaving Menard in March 2017.  In any event, it is undisputed that Dr. Trost did not examine Plaintiff after October 28, 2016.

It is well settled in this Circuit that the Eighth Amendment does not demand "specific care" or the "best care possible"; rather, it requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Indeed, the Seventh Circuit recognizes that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).  Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'"  *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)).

Here, the evidence demonstrates that Dr. Trost's treatment decisions in October 2016 were not "blatantly inappropriate."  Although Plaintiff clearly would have preferred a less-conservative treatment regimen, Dr. Trost utilized his professional judgment in addressing Plaintiff's complaints, and believed stool softeners and laxatives would resolve the same. Further, Dr. Trost did not examine Plaintiff after October 2016, thus, the Court cannot find Dr. Trost persisted in a course of treatment known to be ineffective.  *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective").  Finally, the evidence concerning Plaintiff's

attempts to follow-up with Dr. Trost after his October 2016 examination is scant, and insufficient to demonstrate Dr. Trost ignored or failed to meet any substantial risk to Plaintiff's health in failing to interject and change Plaintiff's course of treatment, particularly when Dr. Trost did not have an occasion to again examine Plaintiff.

For these reasons, Dr. Trost is entitled to summary judgment[1].

*Nurse Practitioner Moldenhauer*

There are genuine disputes of material fact that preclude summary judgment in favor of Defendant Moldenhauer.  Defendant Moldenhauer saw Plaintiff on four occasions — October 9, 2016, January 20, 2017, March 6, 2017, and January 29, 2018.  During the first exam on October 9, 2016, Plaintiff asserts Moldenhauer did not complete a rectal exam despite his complaints of rectal pain and bleeding, and had him unknowingly sign a medical services refusal form. Moldenhauer did, however, refer Plaintiff to Dr. Trost, who saw him on October 28, 2016.  In light of the referral to Dr. Trost and Plaintiff's subsequent exam, the Court does not find Moldenhauer acted with deliberate indifference during this appointment.

A jury could find, however, that Moldenhauer's treatment decisions over the course of the next few appointments spanning from January 2017 to January 2018, rise to the level of deliberate indifference.  Viewing the evidence in Plaintiff's favor as the Court must at this juncture, Moldenhauer refused to conduct any visual or digital rectal exam on Plaintiff in January and March 2017, despite Plaintiff's continued complaints of pain, bleeding, and difficulties defecating. Moldenhauer also failed to order any particular treatment regimen to address Plaintiff's complaints.  As such, Plaintiff was made to wait until February 2018, when he was seen by Dr.

---

[1] Because the Court finds Dr. Trost did not violate Plaintiff's constitutional rights, it need not address Dr. Trost's argument of qualified immunity.  However, the Court notes the Seventh Circuit has found that qualified immunity does not apply to private medical personnel in prisons.  *See Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016) (citing *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 794 (7th Cir. 2014)).

Siddiqui, to have his complaints addressed. Moldenhauer's purported lack of treatment and resulting delay in resolution of Plaintiff's hemorrhoids preclude summary judgment in favor of Defendant Moldenhauer. Moldenhauer is also not entitled to qualified immunity because the Seventh Circuit does not extend such immunity to private medical personnel in prisons, *see Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016) (citing *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 794 (7th Cir. 2014)), and even if Moldenhauer was entitled to such immunity, his conduct in ignoring and failing to treat Plaintiff's complaints violates clearly established law under the Eighth Amendment.

### *Warden of Menard*

The Warden of Menard, currently Anthony Wills, seeks summary judgment on Plaintiff's claim for injunctive relief, indicating that Plaintiff is no longer at Menard as he is incarcerated at Hill, and relying on Plaintiff's testimony that he is no longer seeking any further medical treatment related to his hemorrhoids (*see* Doc. 76-1 at 30-31). It is well established that when a prisoner is transferred or released from IDOC custody his claims for injunctive relief are moot. *See Easterling v. Pollard*, 528 F.App'x 653, 656 (7th Cir. 2013) (citing *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011)); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Said relief is moot unless the prisoner "can demonstrate that he is likely to be retransferred." *Higgason*, 83 F.3d at 811 (citation omitted); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Here, there is no evidence that Plaintiff is likely to be transferred back to Menard or that he seeks any further treatment relevant to this lawsuit. Accordingly, Plaintiff's request for injunctive relief is moot and summary judgment in favor of the Warden of Menard is granted.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by the Warden of Menard Correctional Center (Doc. 75) is **GRANTED**, and the Motion for Summary Judgment filed by Defendants Dr. Trost and Michael Moldenhauer (Doc. 78) is **GRANTED IN PART AND DENIED IN PART**.   Plaintiff's request for injunctive relief is dismissed, and summary judgment is granted in favor of the Warden of Menard.   Judgment is also entered in favor of Defendant Dr. Trost and against Plaintiff.   Plaintiff will proceed in this case on the following claim:

> Count Two:   Eighth Amendment deliberate indifference claim against Nurse Practitioner Moldenhauer for refusing to examine Plaintiff, refusing to refer Plaintiff to another medical provider who could examine and treat his hemorrhoids, and giving Plaintiff medication that worsened his condition and failed to relieve Plaintiff's pain.

**IT IS SO ORDERED.**

**DATED: September 22, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**